Grafton
No. 2010-042

THE STATE OF NEW HAMPSHIRE

v.

RYAN LAPLACA

Argued: March 10, 2011
Opinion Issued: June 28, 2011

*Michael A. Delaney*, attorney general (*Constance N. Stratton*, senior assistant attorney general, on the brief, and *Thomas E. Bocian*, assistant attorney general, orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Ryan LaPlaca, appeals the decision of the Superior Court (*Vaughan*, J.) denying his motion for a hearing on the issue of whether his suspended sentence should be imposed. We reverse in part, vacate in part and remand.

The following facts are drawn from the trial court's order or are undisputed on the record before us. On June 18, 2009, the defendant pled true to a probation violation. In July, he was sentenced to the New Hampshire State Prison for two-and-one-half to five years, suspended for five years. As a condition of his sentence, the defendant agreed to participate in the Grafton County Drug Court Sentencing Program (Program) and signed a Grafton County Drug Court Sentencing Program Participation Agreement. *See State v. Belyea*, 160 N.H. 298, 301-02 (2010) (providing a brief description of the Program). An addendum to his sentence provided in part:

> The prison sentence is suspended for a period of 5 years. The suspension is conditioned on good behavior and compliance with all terms and conditions of the [Program]. *Any violation of the terms and conditions of the [Program] shall result in the imposition of sanctions, without hearing*, by the court as deemed fair and appropriate, consistent with statutory authority and the descriptions as outlined in the [Program] policy manual. The defendant waives any right(s) to any and all hearings. Termination of participation in the [Program] shall result in the imposition of the suspended prison sentences and fines without hearing. The defendant shall affirmatively waive any and all rights to a hearing.

(Emphasis added.) At the sentencing hearing, the defendant was represented by counsel and advised of his rights.

On December 8, the State moved to impose the defendant's suspended sentence, alleging that the defendant had violated the conditions of his sentence by being terminated from the Program. A hearing on the State's motion was scheduled for December 16. On December 15, the defendant filed an assented-to motion to continue the hearing in order to provide defense counsel "more time to prepare to represent [the defendant] adequately." The trial court denied the motion. Due to a scheduling conflict, the defendant's counsel was unable to attend the December 16 hearing. On that day, substitute counsel filed a motion for a hearing on the State's motion to impose the defendant's suspended sentence. In his motion, the

defendant challenged the basis for his termination from the Program and requested a hearing on the State's motion to impose pursuant to his state and federal due process rights.

On December 22, the trial court issued an order denying the defendant's motion and granting the State's motion to impose the suspended sentence. The court found that "by entering into the [Program], the defendant voluntarily, knowingly, and intelligently waived any rights to hearings in connection with sanctions or imposition of [suspended] . . . sentences." The court further found that:

> The defendant was sentenced to the New Hampshire State Prison for 2½ - 5 years, [suspended] . . . for 5 years on the conditions of good behavior and compliance with the terms and conditions of the Participation Agreement. The Participation Agreement required participation in treatment. The defendant has been terminated from treatment. The [Program] team has determined that there are no reasonable alternatives to treatment. Treatment is an integral part of the [Program]. The treatment requirements are established by the [Program] treatment team. The defendant, in entering into the [Program], acknowledged the obligation to participate in treatment. His termination from treatment renders his further participation in the [Program] impossible.

The basis for the defendant's termination from treatment is not apparent from the record. Nor are the reasons as to why the Program team determined there were no reasonable alternatives to treatment. This appeal followed.

The defendant argues that the trial court erred in imposing his suspended sentence without a hearing and that this failure violated his state and federal constitutional rights to due process. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, XIV. We first consider the defendant's argument under the State Constitution, using federal cases only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983). Because this issue poses a question of constitutional law, we review it *de novo*. *State v. Hall*, 154 N.H. 180, 182 (2006).

■ Part I, Article 15 of the State Constitution provides in part: "No subject shall be . . . deprived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land . . . ." N.H. CONST. pt. I, art. 15. "Law of the land in this article means due process of law." *State v. Veale*, 158 N.H. 632, 636 (quotation omitted), *cert. denied*, 130

S. Ct. 748 (2009). "The ultimate standard for judging a due process claim is the notion of fundamental fairness." *Id.* at 637 (quotation omitted). "Fundamental fairness requires that government conduct conform to the community's sense of justice, decency and fair play." *Id.* (quotation omitted).

■ "Our threshold determination in a procedural due process claim is whether the challenged procedures concern a legally protected interest." *Id.* (quotation omitted). If such an interest is at stake, we then determine whether the procedure at issue afforded the requisite safeguards. *State v. Mwangi*, 161 N.H. 699, 703 (decided April 12, 2011). To do this, we balance three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Veale*, 158 N.H. at 639 (quotation omitted); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

■ We have recognized that a significant liberty interest exists which is worthy of due process protection under our State Constitution when the State seeks to revoke a suspended sentence and incarceration may be the sanction. *See Stapleford v. Perrin*, 122 N.H. 1083, 1088 (1982); *State v. Flood*, 159 N.H. 353, 355 (2009). This is so because the conditional liberty of a defendant under a suspended sentence "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [defendant] and often on others." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (discussing the conditional liberty interests of a parolee). Therefore, in a circumstance where the State seeks to revoke a suspended sentence,

> the record must show that the following procedures have been afforded: (1) written notice of the conduct which triggers the sought-after incarceration; (2) disclosure to the defendant of the evidence against him; (3) the opportunity to be heard in person and to present witnesses and evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a statement in the record by the court indicating in substance the evidence relied upon and the reasons for imposing commitment; and (6) representation by counsel, to be appointed by the court if the defendant is indigent.

*Stapleford*, 122 N.H. at 1088; *see Stone v. Shea*, 113 N.H. 174, 177 (1973). The State bears the burden of proving that the defendant violated the conditions of his suspended sentence by a preponderance of the evidence. *See Flood*, 159 N.H. at 357. Affording the defendant these procedures ensures "that the fact-finder will make an accurate determination on the basis of reliable evidence and verified facts." *Moody v. Cunningham*, 127 N.H. 550, 554 (1986); *Morrissey*, 408 U.S. at 484 (stating that a parole revocation hearing should be "structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior").

Here, the trial court imposed the defendant's two-and-one-half to five year suspended sentence without a hearing. Nonetheless, the State argues that the defendant was not deprived of his right to due process "[b]ecause [he] validly waived the right" to a hearing. The defendant does not dispute that he understood the waiver provision at the time of his July 2009 sentencing or that the provision was imposed voluntarily. Rather, the defendant argues that basic due process protections require that a defendant be afforded a hearing when he contests the imposition of his suspended sentence and that a defendant cannot waive the right to a hearing prior to that right being implicated.

 It is indisputable that a defendant can waive certain constitutional rights. For example, "[w]hen a defendant knowingly and intelligently enters a plea of guilty, he waives a series of constitutional guarantees including the privilege against compulsory self-incrimination and the rights to confront the witnesses against him and to obtain a trial by jury." *State v. O'Leary*, 128 N.H. 661, 665 (1986). Notably, however, a defendant's waiver of rights on a guilty plea is made *after* those rights have been implicated and with the knowledge and understanding of the particular allegations against him triggering those rights. In fact, the crux of a knowing, voluntary, and intelligent guilty plea is that the defendant understand the essential elements of the crime to which he is pleading guilty. *State v. Thornton*, 140 N.H. 532, 537 (1995); *see also Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (stating that the defendant's "plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process" (quotation omitted)).

 Likewise, a defendant can waive the right to a hearing to contest allegations that he has violated the terms of his suspended sentence once he is fully informed of the allegations triggering that right. *See, e.g., State v.*

*Rogers*, 170 P.3d 881, 886 n.6 (Idaho 2007) (noting that a defendant could waive his due process rights in the context of a drug court termination); *Gosha v. State*, 931 N.E.2d 432, 435 n.3 (Ind. Ct. App. 2010) (same); *cf. United States v. LeBlanc*, 175 F.3d 511, 515 (7th Cir. 1999) (waiver of the right to a hearing on revocation of supervised release, made after State petitioned for revocation, must be knowing and voluntary).

The issue of the validity of a defendant's waiver of the right to a hearing, made in advance of knowledge of the factual allegations against him, is an issue of first impression in New Hampshire. Our review of case law outside of New Hampshire reveals that there is a paucity of authority on this issue. *See* W. Meyer, Nat'l Ass'n of Drug Court Prof'l Nat'l Conf., CONSTITU-TIONAL AND OTHER LEGAL ISSUES IN PROBLEM-SOLVING COURTS 10 (2009) (noting that "[t]he law in this area is very much in a state of flux"), *available at* http://09conferencecd.nadcp.org/Handouts/A-19%20Constitutional%20Issues%203-15-09%20(2).pdf (last visited June 1, 2011). We have found the most helpful case on point to be *Staley v. State*, 851 So. 2d 805 (Fla. Dist. Ct. App. 2003).

In *Staley*, the defendant "was placed on probation for drug offenses." *Staley*, 851 So. 2d at 806. Shortly thereafter, the defendant "admitted violating his probation in exchange for a suspended sentence of two years' imprisonment with the requirement that he spend two years on drug offender probation, subject to all the conditions of drug court." *Id.* "He signed a 'drug court contract,' which included the special condition that he 'agree[d] to waive his rights to an adversarial hearing or trial and w[ould] instead proceed directly to sentencing upon determination' " that he failed to successfully complete the Drug Court Program. *Id.* Subsequently, the defendant allegedly violated the conditions of the Drug Court Program. *See id.* "An arrest/notice to appear and probable cause statement was issued . . . but no affidavit of violation of probation was ever filed." *Id.* The Florida circuit court held a hearing, at which the State presented no proof of violation. *Id.* The court found that the defendant "had violated his probation, and sentenced him to two years' imprisonment." *Id.*

On appeal, the Florida District Court of Appeal noted that, as a probationer, the defendant was entitled to minimal due process, including "a probation revocation hearing if the probationer disputes the charges." *Id.* It found that the procedure employed in the defendant's case "failed to satisfy the statutory and constitutional requirements." *Id.* The court disagreed with the State's contention "that the procedure was sufficient because [the defendant] waived his right to an adversarial hearing in his drug court contract," reasoning, in part:

> [The defendant] simply could not have knowingly and intelligently waived his right to contest allegations against him without know-

ing what those allegations were. A probationer can certainly waive his rights to due process and to statutory procedures after they have been implicated. Thus, for instance, once an affidavit of violation has been filed the probationer may elect not to contest it. But we do not believe he can prospectively waive these rights.

*Id.* at 806-07. The court concluded that the defendant's "purported waiver . . . would impugn the integrity of the judicial system and undermine public confidence in the system" as the defendant "would be subject to imprisonment without a hearing and without a court determination that the evidence against him was sufficient." *Id.* at 808. We share the concerns of the Florida Court of Appeal.

■ Here, as in *Staley*, when the defendant agreed to participate in the Program, he executed a waiver of "any right(s) to any and all hearings." This waiver, however, did not relieve the State of its burden to prove, by a preponderance of the evidence, that he violated the conditions of his suspended sentence, because the defendant could not have knowingly and intelligently waived his right to a hearing to contest the allegations of misconduct against him without full knowledge of what those allegations were. *See Thornton*, 140 N.H. at 537; *Staley*, 851 So. 2d at 807; *cf. People v. Orozco*, 103 Cal. Rptr. 3d 646, 649 (Ct. App. 2010) ("A broad or general waiver of appeal rights ordinarily includes error occurring before *but not after* the waiver because the defendant could not knowingly and intelligently waive the right to appeal any unforeseen or unknown future error." (quotation omitted)). It was impossible for the defendant to have full knowledge of the allegations against him when the facts giving rise to those allegations had yet to occur. The defendant's advance waiver of the right to any and all hearings was akin to pleading guilty to any future allegations brought against him because the effect of such a waiver eliminated the obligation of the State to prove the allegations against him, and deprived him of the opportunity to contest them.

■ It would subvert the requirements of due process to uphold the defendant's prospective waiver of his right to a hearing. *Cf. Stapleford*, 122 N.H. at 1088-89; *Thornton*, 140 N.H. at 537. When the defendant faces the potential imposition of a full sentence of incarceration, an advance waiver of any and all hearing rights presents a serious risk of an erroneous deprivation of the defendant's significant liberty interest. *See Veale*, 158 N.H. at 639. To allow this course in the present case would be inconsistent with "the community's sense of justice, decency and fair play." *Id.* at 637 (quotation omitted).

Accordingly, we conclude that the trial court's failure to provide the defendant with a hearing in this case deprived him of his right to due process under the State Constitution. We therefore reverse the ruling denying the defendant's request for a hearing on the State's motion to impose, vacate the imposition of the defendant's suspended sentence and remand for proceedings consistent with this opinion and with the rights afforded under *Stapleford* and its progeny.

Because we conclude that the trial court's failure to provide the defendant with a hearing violated the defendant's rights under the State Constitution in this case, we need not address the defendant's argument under the Federal Constitution.

As a final note, we recognize "that the requirements of due process are flexible and call for such procedural protections as the particular situation demands." *Mwangi,* 161 N.H. at 703 (quotations omitted). The imposition of a suspended sentence "is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." *Morrissey,* 408 U.S. at 480 (discussing due process requirements applicable to parole revocations). Nevertheless, the liberty interest involved in this case "is valuable and its termination calls for some orderly process, however informal." *State v. Almodovar,* 158 N.H. 548, 554 (2009) (quotation omitted). It bears emphasizing, however, that our decision herein is solely limited to whether a defendant can prospectively waive the right to a hearing in the context of the imposition of his full suspended sentence of incarceration. We leave for another day whether such prospective waiver would be valid in the context of the imposition of lesser sanctions.

*Reversed in part; vacated in part; and remanded.*

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.