SLIP OPINION

# SUPREME COURT OF ARKANSAS

No. CR-15-983

| | |
|---|---|
| JASON CARROLL NEAL<br>APPELLANT | **Opinion Delivered** June 30, 2016 |
| V. | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CR-14-232A] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE BOBBY D. MCCALLISTER, JUDGE |
| | <u>REVERSED AND REMANDED</u>. |

**KAREN R. BAKER, Associate Justice**

Appellant Jason Carroll Neal appeals the order of the Saline County Circuit Court denying his petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2015). On appeal, Neal argues that the circuit court erred in finding that (1) Neal was not deprived of due process upon his expulsion from the drug-court program without a hearing; and (2) Neal did not receive ineffective assistance of counsel. We reverse the circuit court's order denying Neal's petition for postconviction relief and remand for a hearing consistent with this opinion.

Neal entered a plea of guilty to breaking and entering, possession of firearms by certain persons, and possession of drug paraphernalia.[1] The guilty-plea statement states that the

---

[1]The guilty-plea statement does not contain a file-mark stamp; however, it is dated August 4, 2014. Additionally, despite Neal's simultaneous plea of guilty to all three charges, the possession-of-firearms and possession-of-drug-paraphernalia charges arise from a separate case filed in Saline County Circuit Court, 63CR-14-465.

maximum punishment for each of the charges is as follows: twenty years' imprisonment for the possession-of-firearms charge, six years' imprisonment for the possession-of-drug-paraphernalia charge, and six years' imprisonment for the breaking-and-entering charge. We note that, despite these maximum sentences equaling 384 months' imprisonment, the guilty-plea statement contained a provision stating, "I understand that the negotiated plea I am entering includes a recommended sentence of: 420 month's ADC."[2]

Also, at the time of the entry of the guilty plea, Neal executed the "Saline County Adult Drug Court Admission Form and Order CR–14–465 & CR–14–232A." The drug-court admission form contained an express waiver of rights, including a waiver of Neal's right to "any later Rule 37 Motions claiming ineffective assistance of counsel or any other constitutional grounds for release." The form also stated, "I understand the Plea Agreement I am signing below is approximately 25% longer than would be available if I were not a Drug

---

[2]During oral arguments, the State argued that the guilty-plea statement contained a mere scrivener's error because Neal was charged as a habitual offender and thus the recommended sentence of 420 months' imprisonment was correct. Noticeably absent from the record are felony informations or charging instruments for any of the three charges. Thus, we are unable to determine whether Neal was, in fact, charged as a habitual offender.

Further, we note that Arkansas Code Annotated section 5-4-104(a) (Supp. 2015) provides that "[n]o defendant convicted of an offense shall be sentenced otherwise than in accordance with this chapter." We have held, since the enactment of our criminal code, that sentencing shall not be other than in accordance with the statute in effect at the time of the commission of the crime. *State v. Joslin*, 364 Ark. 545, 222 S.W.3d 168, (2006) (citing *Taylor v. State*, 354 Ark. 450, 125 S.W.3d 174 (2003); *State v. Murphy*, 315 Ark. 68, 864 S.W.2d 842 (1993)). Where the law does not authorize the particular sentence pronounced by a trial court, the sentence is unauthorized and illegal, and the case must be reversed and remanded. *Joslin*, *supra* (citing *Taylor*, *supra*; *State v. Stephenson*, 340 Ark. 229, 231, 9 S.W.3d 495, 496 (2000)).

Court Participant. I hereby agree to the terms of the Judgment and Commitment Order, and I affirmatively state: I understand the Judgment and Commitment will be entered and the sentence will begin immediately if I am expelled from Drug Court for any reason. I understand the Judgment and Commitment is held in Abeyance and not dated or filed with the Circuit Clerk unless I am expelled from Drug Court." Further, the form stated that Neal waived his "right to have legal notice, a hearing and/or any other rights I may have regarding due process prior to Drug Court sanctions (which sanctions may include but are not limited to: . . . expulsion from Drug Court and execution of original sentence)."

On April 6, 2015, Neal was sentenced to 420 months' imprisonment for his alleged violation of the drug-court program. However, there is no record of the program rules or a hearing on the alleged violation although Rule 24.7 of the Arkansas Rules of the Criminal Procedure and Administrative Order Number 4 both require verbatim transcripts of the proceedings. The entirety of the April 6, 2015 sentencing proceeding is as follows:

COURT: Mr. Neal, in being sent out of the 90-day program you basically have given us no choice on this one. Um, at this point in time, we're imposing your sentence. It's 420 months in the Arkansas Department of Corrections.

NEAL: You Honor, can I ask you a question?

COURT: Sir?

NEAL: Can I ask a question?

COURT: Sure.

NEAL: When I – what I got wrote up for initially was dropped. They – then they in turn came and wrote me up, changed the write-up to a CR17. The lieutenant told me, said, Look, Neal, I done investigated it. We

3

know y'all was horse-playing, but they're going to charge you with something that's cardinal rule so that you have to do some hold time. I said, Okay. I understand. He said, just do the hold time and go back. I said okay.

I go to court, and in that court proceeding it's just like this one. They've got - they push the tape recorder. It's being recorded, everything. They read my charge. They let me say something. I stepped out. I come back in and they said they're finding me guilty of the CR 17. I said okay. They said, do you want to say anything that might cause us to give you - I said, yes. I said, I've been here 60 days. Y'all interviewed me last week to be number two in charge. I didn't get a write-up or nothing the whole time I was there. Me and Jamie – Jamie's the coordinator. They interviewed me to be assistant coordinator. That would never have happened if I'd been cutting up like - you know that I mean?

I - I did - they never had to tell me to tuck my shirt in, shave or nothing. I did everything I was supposed to do. Yes, on the Friday night at 8:00 getting out of the shower about eight dudes in there, locker room, horse-playing. We were cutting up. And I was found guilty of that. I admit that. I did - and I was found guilty of horse-playing. And I admit that. I did do that. We were just cutting up.

They found me guilty of the CR17, but on the tape recording they – one of the options was to kick me out of the program. They said, this is what can happen if you're found guilty. I said - then they read it off. This is all recorded. I said, okay.

When they brought me back in and said they found me guilty, they said, 15 days in the hole and loss of privilege meaning I couldn't go in the commissary or nothing else when I got out. And that's on the tape recording. At that time, I went and I did 13 days of it. Ms. Gorham showed up to pick me up.

On - on the recording - if they were gonna - if they would have kicked me out of the program for what I did, they would have had to have said that in the court proceeding, that - what they - they found me guilty and this is what they were doing. Your Honor, I promise you, they gave me 15 days in the hole and that was it. This is on the tape. This is all on recording. I'm not - I didn't get - I went and did my - sat in

the hole. I didn't have nothing but a Bible. I sat right there and read it. The only time I seen anybody was when they brought me a tray other than that. That 15 days was all they wanted. They did not tell me I was kicked out.

Now, what happened from the time that I got – went into the hole til the time Ms. Gorham showed up to get me – when they told me to dress out, I thought I was going back and I had two days left. In the court proceeding – I'm just asking you this: if they say this is what we're – this what your sentence is, is that not what it is? Or –

COURT: You're – and I'm going to answer it and we're gonna be done in about two seconds. The process of ADC punishment and ADC inter-workings is not something I have any control over. As I understand it, we were told – and there's no question about it. We were told to come get you.

It has – again, as I understand it, it has to do not only with that incident, but in general, Jason, you're not fit for this program because you don't want to – you don't want to do the things to get through this program that you have to do. And you end up with your negativism pulling everyone down. And we're done. You can take him.

NEAL: Well, I never had a chance to being with –

COURT: Mr. Mallory –

NEAL: – if that's the – if that's the case.

COURT: Mr. Mallory –

NEAL: You did exactly what I said y'all were gonna do. You gave me 35 years so that you could snow me in. I hope you're happy. When God judges you, I hope you get the same thing.

On April 22, 2015, Neal filed a motion to set aside the judgment and commitment. However, the record demonstrates that the circuit court failed to act on this motion. On May 28, 2015, Neal filed a petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure. In his petition, Neal argued that the procedure established by

5

SLIP OPINION

the court for participation in the drug-court program is in violation of his right to due process because it allows for expulsion from the drug-court program without notice and a hearing and that he received ineffective assistance of counsel.

On August 20, 2015, the circuit court entered an order denying Neal's petition for postconviction relief without a hearing. On September 9, 2015, Neal filed his notice of appeal.

We will reverse the circuit court's decision granting or denying postconviction relief only when that decision is clearly erroneous. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). "A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *Id*. at 292 (quoting *Howard v. State*, 367 Ark. 18, 26, 238 S.W.3d 24, 31 (2006)).

On appeal, Neal argues that the circuit court erred in denying his petition for postconviction relief because his right to due process was violated when he was expelled from the drug-court program without a hearing, and these due-process rights were so fundamental that they could not be waived. To support his argument, Neal cites to *Tornavacca v. State*, 2012 Ark. 224, 408 S.W.3d 727. In response, the State argues that we should overrule *Tornavacca* because it permits a petitioner to raise due-process claims for the first time in a petition for Rule 37 relief. For the reasons that follow, we decline the State's invitation to overrule *Tornavacca* but instead extend its protections to the present case.

In *Tornavacca*, as in the present case, Tornavacca claimed a right to due process when

he was subsequently expelled from the drug-court program. In holding that Tornavacca's due-process claim qualified as an issue that may be raised in a Rule 37 proceeding, we explained,

> Moreover, "for many years, Arkansas has allowed collateral attacks upon a final conviction and appeal by means of a postconviction challenge to determine whether a sentence was void because it violated fundamental rights guaranteed by the Constitutions or laws of Arkansas or the United States." *Buckley v. State*, 349 Ark. 53, 66, 76 S.W.3d 825, 833 (2002) (citing *Davis v. State*, 345 Ark. 161, 44 S.W.3d 726 (2001) (holding that Rule 37 does not permit a petitioner to raise questions that might have been raised at the trial or on the record on direct appeal, unless they are so fundamental as to render the judgment void and open to collateral attack)). We have acknowledged that some issues are "so fundamental as to void the judgment absolutely" and that such issues will not be waived for purposes of postconviction relief by the failure to raise them at trial. *Rowbottom v. State*, 341 Ark. 33, 36, 13 S.W.3d 904, 906 (2000) (quoting *Finley v. State*, 295 Ark. 357, 363, 748 S.W.2d 643, 647 (1988)). We have applied this exception to claims of double jeopardy in *Rowbottom*, and the denial of a trial by a twelve-member jury in *Collins v. State*, 324 Ark. 322, 920 S.W.2d 846 (1996). Similarly, this court made it clear in *Swagger v. State*, 227 Ark. 45, 296 S.W.2d 204 (1956), that a judgment is void where there is an absence of due process. *See also Miller v. State*, 239 Ark. 836, 394 S.W.2d 601 (1965) (holding that the failure to observe the constitutional safeguards of due process renders a criminal conviction illegal and void).

2012 Ark. 224, at 12–13, 408 S.W.3d at 736.

Next, the State argued that Tornavacca had waived his rights of due process in the drug-court program when he entered the guilty pleas. We stated that "[i]t is true that a criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *Id.* at 13, 408 S.W.3d at 737 (citing *Echols v. State*, 354 Ark. 414, 125 S.W.3d 153 (2003) (Imber, J., concurring) (citing *United States v. Mezzanatto*, 513 U.S. 196 (1995))). We held that Tornvacca's waiver was a waiver only of his right to trial on the underlying charges, and his waiver did not include his right to due

process prior to being expelled from the drug-court program. *Id*. at 13–14, 408 S.W. 3d at 737. However, we ultimately affirmed the circuit court because Tornavacca received a full hearing on this claim that he was improperly expelled from the drug-court program during his Rule 37 proceedings. *Id*. at 15, 408 S.W.3d at 737.

Here, unlike *Tornavacca*, Neal's Rule 37 claims were denied without a hearing. Thus, the issue of whether a defendant can prospectively waive due process is squarely before us. Although this is an issue of first impression for this court, we find the Supreme Court of New Hamphsire's decision in *State v. LaPlaca*, 27 A.3d 719 (N.H. 2011) helpful to our analysis. In *LaPlaca*, the court held that a defendant could not execute a knowing, voluntary waiver of his right to a hearing on the imposition of sentence following removal from a drug-court program because the defendant did not know the accusations regarding the termination of the program at the time the waiver was executed. Further, the court explained that it was impossible for the defendant to have full knowledge of the allegations against him when the facts giving rise to those allegations had yet to occur. *Id*. at 725. "The defendant's advance waiver of the right to any and all hearings was akin to pleading guilty to any future allegations brought against him because the effect of such a waiver eliminated the obligation of the State to prove the allegations against him, and deprived him of the opportunity to contest them." *Id*. Accordingly, the court held,

> It would subvert the requirements of due process to uphold the defendant's prospective waiver of his right to a hearing. When the defendant faces the potential imposition of a full sentence of incarceration, an advance waiver of any and all hearing rights presents a serious risk of an erroneous deprivation of the defendant's significant liberty interest. To allow this course in the present case would be inconsistent with the community's sense of justice, decency and fair play.

*Id.* at 725–26; *see also Staley v. State*, 851 So. 2d 805 (Fla. Dist. Ct. App. 2003) (stating "[the defendant] simply could not have knowingly and intelligently waived his right to contest allegations against him without knowing what those allegations were").[3]

Here, applying that same analysis, we extend the holdings of *Tornavacca* and *LaPlaca* to the present case and hold that the right to minimum due process before a defendant can be expelled from a drug-court program is so fundamental that it cannot be waived by the defendant in advance of the allegations prompting the removal from the program. Neal was

---

[3]Further, we note that several other jurisdictions have held that drug court participants are entitled to hearings because drug court terminations affect liberty interests and therefore the Due Process Clause—the right cannot be prospectively waived. *See* National Drug Court Institute, *The Drug Court Judicial Benchbook* § 8:4, at 163–64 (2011). "The consequences of termination from drug court are comparable to those sustained in a probation revocation . . . . the best practice is to accord drug court participants the same due process rights enjoyed by probationers." *Id.* (citing *People v. Anderson*, 833 N.E.2d 390 (Ill. App. Ct. 2005); *State v. Cassill-Skilton*, 94 P.3d 407, 410 (Wash. Ct. App. 2004); *Hagar v. State*, 990 P.2d 894, 899 (Okla. Crim. App. 1999)). In *Gosha v. State*, 931 N.E.2d 432 (Ind. Ct. App. 2010), the court explained that termination from drug court requires the written notice of the claimed violations, the disclosure of the evidence against the defendant, the opportunity to be heard and present evidence, the right to confront and cross-examine witnesses, and a neutral and detached hearing body. *See also Harris v. Commonwealth*, 689 S.E.2d 713, 713 (Va. 2010) ("Consequently, because Harris had no opportunity to participate in the termination decision, when deciding whether to revoke Harris' liberty and impose the terms of the plea agreement deprived Harris of the opportunity to be heard regarding the propriety of the revocation of his liberty interest."). Finally, in *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973), the United States Supreme Court required a probationer be accorded a preliminary and final revocation hearing. Before the preliminary hearing, the probationer must be notified of the hearing, its purpose and the alleged violation, the limited right to confront and call witnesses, and the probationer's right to be present, as well as given a written report of the hearing. At the probation revocation hearing, similar elements are required, including (1) written notice of the violation; (2) disclosure of the evidence against the probationer; (3) an opportunity to be present and testify; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral magistrate; and (6) a written finding of the evidence relied upon and the reasons for revocation. National Drug Court Institute, *The Drug Court Judicial Benchbook*, § 8:4.

allegedly expelled from the drug-court program for horseplaying. During the sentencing proceeding, Neal argued that he had already been disciplined for the violation. Further, as noted above, the circuit court changed the justification for expulsion from the drug-court program as follows:

> You're – and I'm going to answer it and we're gonna be done in about two seconds. The process of ADC punishment and ADC inter-workings is not something I have any control over. As I understand it, we were told – and there's no question about it. We were told to come get you.

> It has – again, as I understand it, it has to do not only with that incident, but in general, Jason, you're not fit for this program because you don't want to – you don't want to do the things to get through this program that you have to do. And you end up with your negativism pulling everyone down. And we're done. You can take him.

Because Neal was not given a hearing[4] or an opportunity to contest his expulsion from the drug-court program, it is unclear to this court precisely how the decision to expel Neal from the drug-court program was made or on what basis.[5] Neal sought to challenge the allegations against him during the sentencing proceeding; however, the decision to expel Neal

---

[4]The dissent states Neal "already had that hearing." This statement is inaccurate, the circuit court conducted a sentencing hearing.

[5]We note that Arkansas Code Annotated section 16-98-303(e) states that each judicial district may develop a training and implementation manual for drug-court programs with the assistance of the:
> (1) Department of Human Services;
> (2) Department of Education;
> (3) Department of Career Education;
> (4) Department of Community Correction; and
> (5) Administrative Office of the Courts.

This manual is also noticeably absent from the record.

10

from the drug-court program had already been made, outside of Neal's presence. As in *LaPlaca*, Neal was denied the opportunity to contest the allegations against him based on the "waiver" contained in the drug-court admission form, a document that was executed before Neal was aware of which allegations would be made against him. Thus, Neal's advanced waiver amounted to a deprivation of his right to due process when he could not have knowingly and intelligently waived his right to contest allegations against him without knowing what those allegations were. *Staley*, *supra*.

The dissent takes issue with our analysis concerning Neal's expulsion from the drug-court program and contends that the drug-court program and the Arkansas Department of Community Correction ("ADCC") residential treatment program are two separate programs. However, this is not supported by the record. The Saline County Adult Drug Court Admission Form states that the "Drug Court Participant" consents "to be supervised by the ADCC." Further, the Drug Court Act authorizes the establishment of a drug-court program in each judicial district. Pursuant to Arkansas Code Annotated section 16-98-303(b)(1), a drug-court program may utilize services from several different agencies, including the ADCC, and those services may include the ADCC "residential treatment program." The Drug Court Act merely authorizes drug courts, funding, and agency support. However, absent from the Drug Court Act, is any authority for ADCC or any other provider to expel a drug-court participant from a drug-court program.

Moreover, the dissent's reliance on *Carroll v. Hobbs*, 2014 Ark. 395, 442 S.W.3d 834 (per curiam) and *Johnson v. State*, 2012 Ark. 212 is misplaced. This court's refusal to weigh

in on the ADCC's decision concerning parole eligibility is of no moment because parole and the drug-court program are entirely distinct. Arkansas Code Annotated section 16-93-101(7) defines parole as "the release of the prisoner into the community by the board prior to the expiration of his or her term, subject to conditions imposed by the board and to the supervision of the Department of Community Correction." Thus, in parole, the defendant has already been sentenced by the court and is no longer subject to the court's jurisdiction. In contrast, a drug-court program is more akin to probation. Probation is defined as "a procedure under which a defendant, found guilty upon verdict or plea, is released by the court without imprisonment, subject to the conditions imposed by the court and subject to the supervision of the Department of Community Correction." Ark. Code Ann. § 16-93-101(8). Accordingly, because a drug-court program is analogous to probation, drug-court participants should be afforded the same protections as a probationer upon revocation.

Based on the record before us, the failure to hold a hearing prior to Neal's expulsion from the drug-court program amounted to a due-process violation, and the circuit court clearly erred in denying Neal's petition for postconviction relief on this basis. Accordingly, we reverse the circuit court's order denying Neal's petition for postconviction relief and remand with instructions for the circuit court to enter an order granting Neal's petition for postconviction relief, vacating the sentencing order, and ordering that a hearing be held in accordance with this opinion to establish whether Neal should be expelled from the drug-court program. Because we reverse on this basis, we need not address Neal's ineffective-assistance-of-counsel claims.

Reversed and remanded.

GOODSON, HART, and WYNNE, JJ., concur.

BRILL, C.J., and DANIELSON and WOOD, JJ., dissent.

**COURTNEY HUDSON GOODSON, Justice, concurring.** I agree with the majority's disposition of this appeal and join it. I write separately to highlight additional due process concerns raised by the facts of the case.

Through our decision in this case as well as our previous decision in *Tornavacca v. State*, 2012 Ark. 224, 408 S.W.3d 727, this court has joined with many other states in holding that defendants participating in drug court[1] are entitled to certain fundamental protections, including the right to notice and a hearing prior to termination from the drug court program. As we noted in *Tornavacca*, these protections emanate from the twin decisions of the United States Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471 (1972), holding that certain minimum due-process requirements apply to parole revocations and *Gagnon v. Scarpelli,* 411 U.S. 778 (1973), applying those protections to probation revocations. At the heart of the decisions in *Morrissey* and *Gagnon* was the Court's recognition that revocation of parole or probation results in a "grievous loss" of liberty to the defendant. *Morrissey*, 408 U.S. at 482. Like defendants facing revocation of probation or parole, defendants terminated from drug court are also sentenced to a term of imprisonment, and accordingly, they experience a similar loss of liberty.

---

[1]Although the program is called drug "court," it is actually a nonadversarial treatment program that includes judicial oversight and coordination between the judge, prosecutor, defense, and treatment providers. *See* Ark. Code Ann. § 16-98-302 (Supp. 2015).

13

SLIP OPINION

The Court in *Morrissey* emphasized that, at a minimum, due process requires that defendants facing a loss of liberty be provided with "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey v. Brewer*, 408 U.S. at 489. In line with these requirements, Arkansas has established procedures to provide minimum protections for defendants facing probation revocation. Ark. Code Ann. § 16-93-307 (Supp. 2015). We have noted that these protections are designed to comply with the decisions in *Morrissey* and *Gagnon*. *Lockett v. State*, 271 Ark. 860, 611 S.W.2d 500 (1981). Additionally, the Arkansas Drug Court Act specifically provides for minimum due process protection, stating that one goal of the program is the "[u]se of a nonadversarial approach in which prosecution and defense promote public safety *while protecting the right of the accused to due process*. Ark. Code Ann. § 16-98-302(b)(2) (Supp. 2015) (emphasis added).

In this case, it is clear that the procedures in the Saline County drug court program fell far short of the necessary minimum due process protections outlined in *Morrissey*. First, the record does not indicate that Neal was provided with written notice of any kind regarding the allegations supporting his removal from the drug court program. We have held that a

SLIP OPINION

defendant has a right to written notice of the allegations against him before his probation can be revoked and that a revocation procedure is "fundamentally unfair" if a defendant cannot properly prepare for the hearing because he is denied advance knowledge about what charges of misconduct are to be investigated as a basis for the proposed revocation of the probation. *Hawkins v. State*, 251 Ark. 955, 957, 475 S.W.2d 887, 888 (1972). Thus, the failure to provide written notice of impending termination from the drug court program can result in a due process violation. *See, e.g.*, *State v. Cassill-Skilton*, 122 Wash. App. 652, 94 P.3d 407 (2004); *Hagar v. State*, 990 P.2d 894 (Okla. Crim. App. 1999).

Second, although Neal did speak at the sentencing hearing, he was not given the opportunity to present evidence or witness testimony to support his position that he should not be terminated from the program or to cross-examine adverse witnesses. Moreover, the fact that he was allowed to address the court in the form of a question during the hearing is of little consequence because it is clear from the colloquy between Neal and the circuit court that the decision to terminate Neal from the program had already been made in advance of the hearing. Indeed, the circuit court imposed Neal's sentence *before* Neal spoke, stating, "Mr. Neal, in being sent out of the 90-day program you basically have given us no choice on this one. Um, at this point, we're imposing your sentence." Even after Neal argued to the court that he was being improperly terminated from the program, the circuit court did not address his concerns, stating instead, "I'm going to answer [your question] and we're gonna be done in about two seconds." Thus, it is abundantly clear from the record that this hearing was not a meaningful opportunity to be heard.

SLIP OPINION

Third, I question whether the decision to terminate Neal from the drug court program was made by a "neutral and detached hearing body" as required by the *Morrissey* decision. Pursuant to the Arkansas Drug Court Act, the circuit court judge may sit on the drug court team assigned to manage the drug court cases. Ark. Code Ann. § 16-98-303(d)(2). As a result, the Act "requires the judge to participate in legislating the drug court program, supervising the execution of the program, and then adjudicating the issue of whether the probationer has violated the rules that same judge helped legislate and enforce. In the process, the probationer is denied his due process guarantee of a hearing before an objective, uninterested, and impartial judge." *Alexander v. State*, 48 P.3d 110, 116 (Okla. Crim. App. 2002) (Lumpkin, J., concurring). At least one appellate court has recognized a violation of a defendant's due process rights if the circuit court does not conduct its own independent analysis of the case but instead relies on the recommendations of the drug court team. *State v. Stewart*, No. M200800474CCAR3CD, 2008 WL 4467179 (Tenn. Crim. App. Oct. 6, 2008).

In this case, during Neal's guilty-plea hearing, the circuit court judge acknowledged that the drug court team, including himself, the prosecutor, and the defense attorney, regularly talked about drug court participants out of court and without the participant present. In fact, the court admitted that "there are times if you screw up that we'll not only talk about you, we'll decide what punishment we're going to do before we ever tell you." Then, in dismissing Neal from the drug court program, the circuit court stated, "[A]s I understand it, it has to do not only with that incident, but in general, Jason, you're not fit for this program

because you don't want to – – you don't want to do the things to get through this program that you have to do. And you end up with your negativism pulling everyone down." Because there was no testimony during the hearing, it is unclear precisely how the circuit court reached its conclusion that Neal "[didn't] want to do the things to get through this program" or that Neal's "negativism [was] pulling everyone down." One can only assume that this information and the recommendation for termination came from the private meetings of the drug court team. Finally, although it appears that Neal sought his recusal, the same judge presided over and denied his request for Rule 37 relief that is the subject of the instant appeal. These circumstances raise a serious question as to the impartiality of the judge in his role as a neutral and detached hearing body.

Fourth, Neal did not receive a written statement by the circuit court as to the evidence relied on and the reasons for removing him from the drug court program, as required by *Morrissey*. Notably, this requirement is codified in section 16-93-307 for revocation of probation, and such a requirement should extend to cases in which a defendant is removed from the drug court program. Indeed, a written order is critical to allow the defendant to appeal from the termination decision. *Hagar*, *supra*.

Fifth, I am concerned by the apparent lack of counsel Neal received after entering the drug court program. Most concerning is that the record does not indicate that Neal was assisted by counsel at the sentencing hearing. In *Gagnon*, *supra*, the United States Supreme Court noted that in certain instances, counsel may be required for a defendant facing revocation of probation. The court stated,

17

> Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Gagnon*, 411 U.S. at 790. In this case, it appears that Neal argued that he had not committed the violation alleged and, accordingly, he may have been entitled to counsel under the analysis in *Gagnon*. Additionally, the very structure of drug court gives me pause regarding whether defendants are receiving adequate and zealous representation once they enter the program. The structure of the drug court system changes the role of the defense lawyer from that of an advocate for the defendant to a member of a non–adversarial team with, among others, the prosecutor and judge. As one writer has argued, "[F]orced non–adversarialism can place defense attorneys in conflict with clients as well as interfere with the provision of competent and zealous representation as required by law." Mae C. Quinn, *Whose Team Am I on Anyway? Musings of A Public Defender About Drug Treatment Court Practice*, 26 N.Y.U. Rev. L. & Soc. Change 37, 58 (2001). This problem comes to a crisis point and the non–adversarial system breaks down when the drug court team seeks to terminate the defendant from the program, such as happened to Neal in this case.

Next, the form that Neal signed to enter the Saline County Drug Court program required him to agree to a sentence that was 25% longer than he would receive if he were not a Drug Court participant. Neal argues that this agreement resulted in him being sentenced to 420 months' imprisonment, despite the maximum sentence for his crimes being 384

18

months.[2] Sentencing is entirely a matter of statute in Arkansas, and a circuit judge may only impose a sentence authorized by statute. *Harness v. State,* 352 Ark. 335, 101 S.W.3d 235 (2003). Furthermore, we have held that circuit judges dealing with drug court offenders are bound by the general sentencing guidelines. *Cross v. State*, 2009 Ark. 597, 357 S.W.3d 895. As we noted in *Cross*, "[T]he Drug Court Act reveals no provision granting drug-court judges special sentencing authority…Furthermore, this court has recognized that a circuit judge lacks the authority to sentence a defendant otherwise than in accordance with Chapter 4 of the Arkansas Criminal Code." *Id*. at 10, 357 S.W.3d at 901. Thus, to the extent that the Saline County Drug Court form purports to authorize a sentence in excess of the maximum statutory sentence, it is improper.

As a final note, because the instant statutory scheme provides that "each judicial district of the state is authorized to establish its own drug court program," there is little consistency in the various drug court programs across the state. *See* Ark. Code Ann. § 16-98-303(a). These inconsistent procedures from one drug court to another suggests "local rules," which we have disallowed in Arkansas for almost 30 years. *Weaver v. State*, 296 Ark. 152, 752 S.W.2d 750 (1988) (recognizing abolishment of local rules through revocation of Ark. R. Civ. P. 83). Additionally, because there is no uniform practice regarding the procedure or

---

[2] The State argued at oral argument that Neal's guilty plea agreement contained an error in that it did not identify that Neal was sentenced as a habitual offender, and accordingly, his sentence was not in excess of the maximum sentence. Regardless of this factual dispute, the fact that the Saline County Drug Court program requires a defendant to agree to a 25% harsher sentence without expressly limiting the sentence to the statutory maximums allows for the possibility of an illegal sentence.

documentation of drug court proceedings, this court is left with very little substance to review to ensure that defendants are being treated fairly.

In short, the facts of this case raise a myriad of concerns regarding the handling of drug court cases. While I recognize the laudable goals of the drug court program, the benefits of the program cannot excuse a denial of fundamental due process to even one criminal defendant. The drug court program can succeed without sacrificing constitutional liberties. In light of this court's recognition that drug court participants are entitled to the protections afforded to parolees and probationers under *Morrissey* and *Gagnon*, I believe a reworking of the current drug court system may be necessary to ensure systematic protection of constitutional rights for its participants.

HART and WYNNE, JJ., join.

**RHONDA K. WOOD, Justice, dissenting.** The majority reverses this case because "the failure to hold a hearing prior to Neal's expulsion from the drug-court program amounted to a due process violation." I dissent because Neal is not entitled to the relief sought.

I agree with the majority that Neal did not waive his future due-process rights at the time of his plea entry. However, there is a fundamental misunderstanding regarding the roles of the Arkansas Department of Community Correction (ADCC) residential substance-abuse program and the Saline County Drug Court program, both of which expelled Neal. The confusion arises from the fact that, according to the circuit court, Neal was "dismissed from the 90-day [substance abuse] program at the Arkansas Department of Correction which was

a requirement of his participation in drug court."[1] Neal's sentence was imposed for failing to complete the residential program, which was a condition of the Saline County Drug Court program. The majority states, "Neal was allegedly expelled from the drug-court program for horseplaying." However, Neal was dismissed from the ADCC residential program, not the Saline County Drug Court program, for "horseplay." The majority uses "horseplay" to suggest that somehow the ADCC expulsion was for a minor reason, however, as the circuit court stated, "his failure to complete the program at the Arkansas Department of Correction was the *first that this Court had ever heard of*" (emphasis added). The majority further states "it is unclear to this court precisely how the decision to expel Neal from the drug-court program was made or on what basis." However, the circuit court explained the reason for its decision at the hearing, in its letter to counsel on the Rule 37 petition, and in the order denying the Rule 37 petition. Neal was expelled from the Saline County Drug Court program for failing to complete the ADCC residential program and the court's finding that Neal was "not fit for this program" because he did not want "to do the things to get through this program."[2]

The Arkansas Drug Court Act created a mixture of judicial and executive authority for drug-court programs. The legislature recognized that "[d]rug court programs may require

---

[1] There are not "drug courts," but rather, "drug-court programs." The shortened version leads to a lot of misunderstanding. *See* Ark. Code Ann. §§ 16-98-301 et seq.

[2] The majority also contends, "the decision to expel Neal from the drug-court program had already been made, outside of Neal's presence." It presumably is referring to Neal's expulsion from the ADCC residential substance-abuse program, not the actual court-involved drug-court program.

a separate judicial processing system differing in practice and design from the traditional adversarial criminal prosecution and trial systems." Ark. Code Ann. § 16-98-303(d)(1). Under the Act, the ADCC shall provide "intensive short-term and long-term residential treatment for drug court program participants." Ark. Code Ann. § 16-98-303(b)(2)(A)(v). The majority appears to misunderstand the distinction between drug-court programs and the services and treatments within the programs. ADCC has discretion over its programs and ultimately whether a participant should be expelled from its residential program. "[We] have consistently declined to dictate the operation of the Arkansas Department of Community Correction except in circumstances where the appellant asserts an infringement upon constitutional rights." *Smith v. May*, 2013 Ark. 248, at 4 (per curiam). We have refused to find a constitutional right to participate in specific correction programs. *See id.* (holding an inmate had no right to participation in ADCC hobby-craft program). Likewise, we have refused to weigh in on the ADCC's decision concerning parole eligibility, although I am not suggesting Neal is in a similar position as a parolee. *Carroll v. Hobbs*, 2014 Ark. 395, 442 S.W.3d 834 (per curiam); *Johnson v. State*, 2012 Ark. 212. These types of decisions are in the province of the executive branch. *See Johnson*, 2012 Ark. 212, at 3. Neal's continued participation in the residential program was a decision of the ADCC. As the circuit court explained in sentencing Neal, "the process of ADCC punishment and ADCC inter-workings is not something I have any control over."

Accordingly, as with parolees, it is not for this court to decide whether Neal should have been allowed to continue in the ADCC residential substance-abuse program. However,

Neal did have minimal due-process rights prior to expulsion from the Saline County Drug Court program and imposition of the sentence, which had been held in abeyance. Again, these are important distinctions, and the circuit court explained this in its letter opinion. It stated, "Mr. Neal admitted in open court that he was sanctioned and did not comply with the rules of the 90-day program from which he was expelled. The drug court really had no other option but to impose the sentence." Because the ADCC residential-treatment program was a "requirement" of the Saline County Drug Court program and Neal was expelled from it and because the circuit court found that Neal was not willing to work the drug-court program, the circuit court imposed his predetermined sentence.

Finally, the majority cites *State v. LaPlaca* to support its holding that Neal ought to receive another hearing concerning his drug-court program expulsion. 27 A.3d 719 (N.H. 2011). *LaPlaca* also considered the waiver issue and held that the "waiver, however, did not relieve the State of its burden to prove, by a preponderance of the evidence, that he violated the conditions of his suspended sentence." *Id. At 725 LaPlaca* stands for the proposition that a participant cannot prospectively waive due process and is entitled to due process at the point of imposing a suspended sentence, and that due process is whether the participant violated a condition of the suspended sentence, which the burden is on the State to prove.

Neal admitted he failed to complete the residential program, which was a condition of the Saline County Drug Court program. Therefore, the preponderance of the evidence showed he violated a condition and the circuit court imposed a sentence that was within its authority and discretion. This is no different than a defendant on probation, who appears for

23

his revocation hearing and admits he violated a term of his probation. The majority appears to agree that Neal is in a similar situation. Consequently, I am uncertain what relief the majority intends to offer Neal. According to the majority, Neal is entitled to a hearing "to establish whether Neal should be expelled from the drug-court program." I assume the majority means expulsion from the Saline County Drug Court program and not the expulsion from the ADCC residential facility, but it is unclear. If the majority intends to follow *LaPlaca*, then it is remanding for a hearing to determine by a preponderance of the evidence whether Neal violated a condition of the Saline County Drug Court program. Neal already had that hearing and we already have that answer because Neal admitted to it. He violated rules of his residential program, which resulted in his failure to complete the residential program.

It is also important to note that this is a Rule 37 Petition and as the circuit court noted in his order denying relief, "Here the petitioner does not contest the facts that led to his expulsion from drug court. He makes no claim that there were witnesses or evidence which, if presented to the Court would have disputed his cause for expulsion from the program. He does not set forth any action that Pete Lancaster could have taken which would have prevented his expulsion from Drug Court." This finding was not clearly erroneous. In addition, at the hearing imposing the sentence, the circuit court's finding that Neal failed to complete the Saline County Drug Court program's condition, and the court's finding that Neal was unwilling to work the court-involved program were not clearly erroneous. Neal had due process and had the hearing for which the majority remands. For these reasons, I dissent.

BRILL, C.J., and DANIELSON, J., join.

*Ryan C. Allen*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson*, Ass't Att'y Gen., for appellee.